## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| FARON WATERS,           ) | |
|     Plaintiff,           ) | |
|                      ) | |
| v.           ) | CIVIL ACTION: 1:19-00798-KD-C |
|                      ) | |
| ROY W. HALL, JR.,           ) | |
|     Defendants.           ) | |

### ORDER

This matter is before the Court on certain Defendants' partial[1] motion for summary judgment (Doc. 78), Plaintiffs' Response (Doc. 81), and Defendants' Reply (Doc. 84); and Defendants' Motion to Strike (Doc. 83).

**I.     Findings of Fact**[2]

On October 23, 2018, Plaintiff Faron Waters (Waters) and Defendant Roy W. Hall, Jr. (Hall), collided in a motor vehicle accident on a four lane roadway (the Cochran Causeway) in Mobile, Alabama near the Alabama River Cellulose (ARC) Terminal/Plant. (Doc. 43; Doc. 81-3 (Accident/Incident Employee Description)). Hall was driving a tractor trailer at the time. Hall describes the accident as occurring while he was making a right turn into a private drive, as follows:

> I come up on ... a narrow driveway, so you have to swing out to your left and turn back into the drive, and that's what ....I had done. I looked back in my mirror. When I first come up on it there were several cars around me, so I slowed down and let them get ahead of me. Then I looked in my mirror and I saw the headlights coming off the bridge. So it was a

---

[1] Defendants Roy W. Hall, Jr. and R an D Trucking, LLC, (Defendants) move for summary judgment on Waters' claims of negligent/wanton entrustment, and the counts of wantonness. (Doc. 78 at 1).

[2] The facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

1

> good distance back, so I started my turn. And I was just about off the road when he [Waters] had slid right underneath me.

(Doc. 78-1 at 3 (Dep. Hall at 52)).  Hall turned on his right signal while in the right lane, waited for cars around him to "get out of the way" so he could "swing out [wide to the left] and then swing back into the driveway."  (Doc. 78-1 at 4-5 (Dep. Hall at 60-61)).  Per Hall, he put on his blinker and as he started to make the turn he was driving very slowly to make sure not to "tear nothing up or run off [the road]" when he saw lights behind him -- two cars on the bridge -- and they were "a good little ways [away], I don't know the distance exact."  (Id. at 4 (Dep. Hall at 60); Doc. 81-1 at 12, 18-20 (Dep. Hall at 80, 87-89)).  Hall testified "I don't have a clue[]" as to how many seconds it takes cars coming off the bridge to get to where he was turning into the ARC Terminal, just that "I know it takes a little bit."  (Doc. 81-1 at 13 (Dep. Hall at 81)).  Per Hall, he "would hope they'd see me[]" when asked about a car coming down the road while he was making the turn.  (Id. at 15 (Dep. Hall at 83)).  Hall testified that "[f]or a short period of time" he would be blocking the left lane of traffic as he made the turn, as he would be driving "[p]robably less than 10 [miles per hour] doing that turn[.]"  (Doc. 81-1 at 17 (Dep. Hall at 86)).  Hall explains: "But we're not talking about five miles an hour from right here. We're talking about doing, you know, a fair amount of speed and then slowing your speed down as you're doing the turn."  (Id. at 18 (Dep. Hall at 87)).Hall's employee incident report describes his version of the accident and includes the following drawings and handwritten notes:



(Doc. 81-3).  Hall adds that all of the lights on his tractor and trailer were in proper working order at the time.  (Doc. 78-1 at 6 (Dep. Hall at 94)).

Waters' vehicle hit Hall's tractor trailer while Hall was turning into the drive.  Waters testified that he first saw Hall's tractor trailer, that he was not speeding, and only saw it "[r]ight as I plowed into it."  (Doc. 78-2 at 3 (Dep. Waters at 47-48)). Waters explains that he was driving without any distractions in the right lane, "with my eyes on the road and hands on the wheel, I don't believe in looking down at anything[]" and "I don't even believe the radio was working at the

time[]" (Id. at 5-6 (Dep. Waters at 50-51)). Waters first saw the tractor trailer when he was closer than 50 feet from it: "I didn't have time to do nothing except to lay over in the seat." (Id. at 6-7 (Dep. Waters at 51-52)). Waters did not see anything and did not see any lights on, on the truck. (Id. at 7 (Dep. Waters at 52)). Waters had not seen the truck up ahead on the road -- the "road was clear." (Id. at 8 (Dep. Waters at 53)). Per Waters, when he first saw the tractor trailer: "I'm talking about it's either take a left and go into oncoming traffic and jeopardize somebody else's life with a carload of young'uns or hit the light pole or try to go under the belly of it. So I tried to go under the belly of it. I -- I knew I was a goner anyway. I just didn't want my head to be cut off when somebody found me." (Doc. 78-2 at 9 (Dep. Waters at 54)).

Following the accident, on June 13, 2019, Waters initiated this action against Hall and his employer R an D Trucking, LLC in the Circuit Court of Mobile County, Alabama, CV-2019-901643, as amended on July 22, 2019. (Docs. 1-1, 1-2). On October 11, 2019, Defendants removed the case to this Court on the basis of federal diversity subject matter jurisdiction. (Doc. 1). On January 13, 2020, Plaintiff filed an amended complaint, adding as a defendant Team Transport, Inc., the owner of the trailer attached to Hall's commercial truck. (Doc. 28). On March 4, 2020, Waters again amended the complaint. (Doc. 43). As alleged, Water asserts claims for negligence and wantonness against all three (3) defendants, and that Hall was acting in the line and scope of his employment as the agent, servant and/or employee of R an D. Specifically, Waters' claims that: 1) Hall negligently and/or wantonly operated a commercial truck causing or allowing it to come into contact with Waters' vehicle; 2) all three (3) the defendants negligently and/or wantonly failed to ensure that conspicuity markings on the trailer by R an D were present and/or in the appropriate location in accordance with federal regulations; and 3) R an D negligently

and/or wantonly entrusted the tractor trailer to Hall.  Waters contends that as a proximate result of the Defendants' combined and concurring negligence and/or wantonness, Waters' body was knocked, shocked, bruised and contused; he underwent medical treatment for his injuries and will undergo future treatment; he was permanently injured; lost wages; will lose future wages; and was caused to suffer both physically and emotionally, still so suffer, and will so suffer in the future. (Doc. 43).

## II.     Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).   Rule 56(c) provides as follows:

> ***(c) Procedures***
> ***(1) Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> ***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> ***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
> ***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

### III. Motion to Strike

Defendants move to strike Paragraph 13 of the Affidavit of Plaintiff's retained expert Travis R. Gourley (Gourley), which states the following:

> 13. The conspicuity tape equipped on Mr. Hall's tanker trailer was not compliant with the Federal Motor Vehicle Safety Standards (FMVSS). The conspicuity tape did not cover at least 50% of the length of the tanker trailer. The conspicuity tape was approximately 15-20 inches higher than the maximum FMVSS allowable height. The purpose of conspicuity tape is to make commercial vehicles more discernable at night.

(Doc. 81-5 at 3 (Aff. Gourley at ¶13)). Per Defendants, Plaintiff has not filed any testimony or other evidence showing that Gourley has expertise (knowledge, skill, experience, training or education) qualifying him to offer such testimony, meriting exclusion. Per Defendants, Gourley is an accredited accident reconstructionist under the Accreditation Commission for Traffic

6

Accident Reconstruction (ACTAR), not an expert in commercial trucking industry standards or federal motor carrier regulations. Thus, Defendants argue that Gourley is not qualified to testify that "Mr. Hall's tanker trailer violated the Federal Motor Vehicle Safety Standards" due to deficiencies in the conspicuity tape. In sum, "Gourley is not rendered an expert in federal motor carrier regulation and commercial trucking standards simply because he has training and experience in reconstructing accidents that may have involved tractor trailers." (Doc. 83 at 3).

Rule 56 of the *Federal Rules of Civil Procedure* provides that motions to strike submitted on summary judgment are not appropriate. Rule 56(c)(2) provides: "[a] party may *object* that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2) (emphasis added). The Advisory Committee Notes specify:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. *There is no need to make a separate motion to strike* . If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Fed.R.Civ.P. 56, *Adv. Comm. Notes,* "Subdivision(c)" (2010 Amendments) (emphasis added). See, e.g.,*Campbell v. Shinseki,* 546 Fed. Appx. 874, 879 (11th Cir. 2013) ("[t]he plain meaning of these provisions show that objecting to the admissibility of evidence supporting a summary judgment motion is now a part of summary judgment procedure, rather than a separate motion to be handled preliminarily[]"). As such, the Court construes the Defendants' motion to strike as an Objection, to be overruled or sustained. However, because the Court has not relied on paragraph 13 to rule on the present motion, the objection is **MOOT**.

IV. **Conclusions of Law**[3]

A. **Negligent Entrustment**

While not alleged as a distinct count, Waters asserts that R an D "negligently...entrusted" the tractor trailer to Hall. (Doc. 43 at 2 at ¶5). To state a claim for negligent entrustment, a plaintiff must show "(1) an entrustment of the vehicle; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) negligent ... use of the entrusted vehicle which proximately cause the plaintiff's damages; and (5) damages." White v. Miller, No. 2018 WL 6181170, *2 (N.D. Ala. Nov. 27, 2018). See also e.g., Prill v. Marrone, 23 So.3d 1, 8 (Ala. 2009); Halford v. Alamo Rent–A–Car, LLC, 921 So.2d 409, 412 (Ala. 2005); Mason v. New, 475 So.2d 854, 856 (Ala. 1985).  In the motor vehicle accident context, negligence by the driver is "but one of the necessary elements[,]" as "what has to be shown" is the driver's incompetence. Mason, 475 So.2d at 856. "The doctrine of negligent entrustment is founded on the primary negligence of the entrustor in supplying a motor vehicle to an incompetent driver, with the manifestations of the incompetence of the driver as a basic requirement of the negligent entrustment action." Id. Additionally, "'[n]egligence is not synonymous with incompetency. The most competent may be negligent .... *But one who is habitually negligent may on that account be incompetent.*' ..." Pritchett v. ICN Medical Alliance, Inc., 938 So.2d 933, 941 (Ala. 2006) (internal citations omitted and emphasis in original). Southland Bank A&A Drywall Supply Co., 21 So. 3d 1196, 1215 (Ala. 2008).

Defendants argue that Waters' negligent entrustment claim fails because Hall *is* R and D, and R and D cannot have entrusted the tractor trailer to Hall -- himself.  Specifically: "It is undisputed that Roy Hall, Jr. is the sole member and operator of R an D Trucking....Roy Hall, Jr.

---

[3] Alabama law applies. Parks Institute v. Target Corp., 812 F.3d 824, 829 (11th Cir. 2016) ("[A] federal court sitting in diversity applies the substantive law of the state in which it sits[]").

is the only employee of R an D Trucking.....R an D Trucking, with Roy Hall, Jr. as its sole member and sole employee, cannot logically entrust a vehicle to himself/itself."  (Doc. 78 at 3-4). Defendants contend that "[t]here is no second actor[,]" only R an D and Hall.  (Id. at 5).  Per Hall, he is the sole member and employee of R an D.  (Doc. 78-1 at 6 (Dep. Hall at 94)).  As such, Defendants argue that Hall, not R an D, would be personally liable for any incompetency (driving), and "[i]t would be contrary to the definition of entrustment to argue that a person negligently entrusted a vehicle to himself."  (Doc. 78 at 5).

      The Alabama Supreme Court has not directly addressed the issue of negligent entrustment to/of oneself.  (Doc. 78 at 4). Instead, Defendants reference the Alabama Supreme Court's adoption of the RESTATEMENT (SECOND) OF TORTS 390 (1985) in Beddingfield v. Linam, 127 So. 3d 1178, 1187 (Ala. 2013) as the law in cases involving negligent entrustment -- which reference a chattel "for the use of another."  However, case law in Alabama is not definitively clear on whether, as a matter of law, "one cannot entrust a vehicle to himself." Big 3 Motors, Inc. v. Hawie, 895 So.2d 349, 352-353 (Ala.Civ.App. 2004).⁴  Regardless, the undersigned need not decide the issue.  This is because Waters does not address negligent entrustment or make any attempt to rebut Defendants' contentions.  (Doc. 81).

---

      4 In that case, litigation arose from personal injuries after Fred Roan, an officer of the defendant company, rear-ended another individual while driving a company vehicle. Big 3 Motors, 895 So.2d at 50-352. The evidence indicated: Roan was acting in his capacity as an officer of Big 3 Motors and had authority to drive the vehicle on the day of the accident; and Roan had eight prior DUI convictions.  Id.  At trial, judgment issued against Roan, individually, and against Big 3 Motors.  Id.  Big 3 Motors appealed and argued, in part, that there was no evidence "indicating that any officer or agent of the company entrusted the company vehicle to Roan ... or that any officer or agent of the company knew that Roan was driving the vehicle on that day." Id. The appeals court held: "it was undisputed that Roan's duties as an officer and employee of the company included driving company vehicles when it was needed[]" and thus, it was "undeniable that Roan, as an officer of the company, entrusted care of the vehicle to himself." Id.

Notably, Waters has wholly failed to address this claim in opposition to the motion for summary judgment, meaning that this claim has been abandoned. See *Clark v. City of Atlanta, 544 Fed. Appx. 848, 855 (11th Cir. 2013)* ("... in failing to respond to the defendants' arguments, Mr. and Ms. Clark abandoned their excessive force and state law claims. 'In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him.' *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citation and internal quotation marks omitted)[]"). See, e.g., *Floyd v. Home Depot USA, 274 Fed. Appx. 763 (11th Cir. 2008)*; *Nance v. Maxwell Federal Credit Union, 186 F.3d 1338, 1340 (11th Cir. 1999)*; *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp., 10 F.3d 1563 (11th Cir. 1994)*; *QBE Ins. Corp. v. Whispering Pines Cemetery, LLC, 2013 WL 673492, *1 at note 1 (S.D. Ala. Feb. 25, 2013)*. "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment...the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust, 43 F.3d at 599*. Waters' Response does not contain any argument in opposition as to this claim, such that it is deemed abandoned. *Powell v. American Remediation & Envtl., Inc., 61 F. Supp. 3d 1244, 1252 n.9 (S.D. Ala. 2014)* (while a court must ensure summary judgment is proper where party wholly fails to respond to motion, it may consider a particular claim abandoned where non-moving party fails to address that claim but does address others). Thus, Defendants' motion on Waters' negligent entrustment claim is **GRANTED**.

B.     **<u>Wantonness</u>**

Wantonness requires "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." <u>Ex parte Essary</u>, 992 So.2d 5, 9-10 (Ala. 2007).[5] "To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty." <u>Hilyer v. Fortier,</u> 227 So.3d 13, 22–23 (Ala. 2017) (internal citations omitted). Reckless is defined as "careless, heedless inattentive; indifferent to the consequences ... marked by lack of proper caution: careless of consequence ... having no regard for consequences; uncontrolled; wild." <u>Berry v. Fife,</u> 590 So.2d 884, 885 (Ala. 1991) (citations omitted). "Wantonness is not simply a more severe version of negligence, but is an entirely different tort concept ... wanton misconduct is characterized by the state of mind of consciously taking an action with knowledge that 'the doing or not doing of [the act] will likely result in injury ....' ..." <u>Green v. Markovitch</u>, 385 F.Supp.3d 1190, 1195 (N.D. Ala. Apr. 19, 2019) (internal citations omitted).

As explained in <u>Hagen v. Pelletier,</u> 2019 WL 4894544, *4 (N.D. Ala. Oct. 2, 2019) (footnote omitted (citing <u>Essary</u>, *supra*)):

> To prevail, the plaintiff does not need to show that "the actor kn[ew] that a person [wa]s within the zone made dangerous by his conduct" or that the actor "entertained

---

5 As noted in <u>Malish v. Hurst</u>, 2019 WL 922251, *5 (M.D. Ala. Jan. 24, 2019): "In *Essary*, the Alabama Supreme Court set forth a well-recognized presumption to be applied to claims of wantonness. 992 So. 2d at 12. This presumption, often referred to as the *Essary* presumption, states that courts do not expect people to "engage in self-destructive behavior" and will presume against wantonness when the risk of injury to the actor is as real as the risk of injury to others. *Id.* Of course, this presumption is not without exception. Indeed, if (1) there is "some evidence of impaired judgment," such as alcohol consumption, (2) the conduct "is so inherently reckless that [the court] might otherwise impute to [the actor] a depravity consistent with disregard of instincts of safety and self-preservation," or (3) "the risk of injury to the actor is somehow not as real as the risk of injury to others," the presumption does not apply. See <u>Griffin v. Modular Transp. Co.</u>, No. 2:12-CV-2378-WMA, 2014 WL 896627, at *3 (N.D. Ala. March 6, 2014)."

11

a specific design or intent to injure the plaintiff" ..... *Id.* Rather, the plaintiff need only show that "the actor is 'conscious' that injury will likely or probably result from his actions." *Id.* Demonstrating this consciousness of injury requires the plaintiff to overcome a rebuttable presumption of the driver's instincts for self-preservation. *Id.* at 12 (noting courts "do not expect an individual to engage in self-destructive behavior"). In the context of an automobile accident, this entails showing that the driver was either so dispossessed of his "normal faculties, such as from voluntary intoxication [that he was] indifferent to the risk of injury to himself" or that his act was "so inherently reckless" that he showed "depravity consistent with disregard of instincts of safety and self-preservation." *Id.* Put simply, a wantonness determination is wholly fact-dependent. *Central Alabama Electric Cooperative v. Tapley*, 546 So. 2d 371 (Ala. 1989).

As a fact-dependent inquiry, wantonness is a question for the jury, and a court may grant summary judgment on a wantonness claim only when "there is a total lack of evidence from which the jury can reasonably infer wantonness." *Cash*, 603 So. 2d at 1003. Alabama courts have denied summary judgment on wantonness claims when "fair minded persons in the exercise of impartial judgment could reach different conclusions as to the existence of wantonness." *Berry v. Fife*, 590 So. 2d 884, 887 (Ala. 1991) (reversing grant of summary judgment where a defendant accelerated into an intersection after mistaking a rock hitting the car's windshield for a gunshot). Denial of summary judgment is proper where either a jury could reach different conclusions on whether the undisputed facts constitute wantonness[] or there is a genuine issue of material fact as to whether the driver engaged in wanton behavior.

"[F]or the wantonness [claims] .... to survive summary judgment, the court would still have to conclude that Plaintiff[] ... presented sufficient evidence that, knowing the existing conditions surrounding the accident, ... [the defendant] was conscious h[is] actions would likely or probably cause injury to another, or that []he acted with reckless disregard for the same. *Essary*, 992 So. 2d at 9. Then, and only then, should Plaintiffs' wantonness claim be submitted to the jury. *Cash*, 603 So. 2d at 1003." Malish, 2019 WL 922251 at *6. The "[d]etermination of consciousness that underlies the question of wantonness may rely on inferences drawn from the circumstances." *Jinright v. Werner Enter., Inc.*, 607 F. Supp. 2d 1274, 1276 (M.D. Ala. 2009).

12

1. **R an D: Wanton Entrustment of Tractor Trailer**

While not alleged as a distinct count, Waters asserts that R an D "wantonly entrusted" the tractor trailer to Hall. (Doc. 43 at 2 at ¶5). Just as with the negligent entrustment claim, Waters wholly fails to address wanton entrustment in response to summary judgment, rendering it abandoned. See *supra*. Thus, Defendants' motion for summary judgment on Waters' wanton entrustment claim is **GRANTED**.

2. **Hall - Wanton Operation of Tractor Trailer**

Defendants move for summary judgment on Waters' claim for wanton operation of the tractor trailer by Hall, arguing as follows:

> ... Hall did not act in a reckless disregard of the consequences, nor was there a failure to act in reckless disregard of the consequences. Hall testified that he observed two vehicles at safe distance behind him when he began to initiate a right turn into a private drive off the Cochran causeway. There is no evidence that Hall's actions were made with the conscious knowledge that another driver may be harmed by the act or failure to act. .... Hall's actions to make a right turn were not made with a reckless disregard or conscious knowledge that the Plaintiff would fail to observe the road in front of him and drive into the rear half of Hall's trailer.

(Doc. 78 at 9-10). Rather, per Defendants, "Hall testified that he observed two vehicles at safe distance behind him when he began to initiate a right turn into a private drive off the Cochran causeway. Just as in *Essary*, Hall's awareness of the traffic behind him and his attempt to make his turn before the traffic reached him "did not elevate his conduct from 'negligent failure to exercise good judgment to a wanton act constituting reckless indifference to a known danger likely to inflict injury.'" *Essary*, 992 So. 2d at 12." (Doc. 84 at 12).

In contrast, Waters contends that Hall violated the rules of the road wantonly because a right-hand turn must be made as close as practical to the right-hand side of the roadway but he

13

made a severe "jug handle" turn, a "sloppy and dangerous" turn, versus a buttonhook turn taught in driver training manuals. (Doc. 81 at 5). Specifically, Waters argues as follows:

> .... Hall stated that he planned to "spend the night" at the ARC terminal on the Cochran causeway. He had been there many times before and was familiar with the area, so he knew as well as anyone that he would have to make a wide turn that would block both lanes of travel. Regardless, .....Hall made that decision even though it was getting dark. .... Hall decided to leave the Love's Truck Stop because it was too crowded to stay..... Hall then drove to the ARC terminal to spend the night even though the ARC terminal is open 24/7, 365 days a year. .... Hall's statement that he needed to park in an unlit area is, therefore, questionable because the terminal was open.
>
> ... Hall knew he knew he was going to have to make that turn at a dark, muddy and wet area. This was a premeditated decision. ....Hall deliberately bypassed the ARC terminal. ... Hall also stated that he could not pull over on the side of the causeway while traffic safely passed by because the shoulders were "too narrow," muddy and wet. Instead, after seeing two cars' headlights coming down the Cochran bridge roughly ½ mile from the impact scene. After seeing the two cars, .... Hall made the decision to swing his truck wide left, to maneuver his truck back to the right at maybe 5 to 10 miles per hour, while blocking both lanes of travel. Basically, .... Hall made a "sloppy and dangerous" turn. .... The training manuals on this topic are very clear, the "jug handle" portion of a right-hand turn should occur after the turn is made. This was not possible in this situation because .... Hall, by his admission, did not have room to maneuver in this muddy area. Again, this is not a primary entrance to the facility he was visiting.
>
> ... Waters stated unequivocally that he did not see the tanker until it was too late....
>
> .... whether .... Hall knew that blocking both lanes of the highway could likely or probably result in injury ..... Hall acted with a consciousness knowing that his actions could lead to injury, primarily that it is self-evidence that blocking both lanes of travel at dark or dusk could likely lead to injury.
>
> ***
>
> No less than three Alabama Rules of the Road regarding turning movements and that require clear signals applied to the turn made by... Hall......There is no situation where it is appropriate to make a turn that jug head turn, blocking both lanes of travel without an appropriate signal and the appropriate reflective tape on the trailer....
>
> ..... Hall stated that he made this turn knowing that there were two cars on the Cochrane bridge a distance of 2,500 feet approximately. At a rate of 55 miles per hour that's 80.6667 feet per second or 30 seconds for those cars on the bridge to

>reach the area of collision...... Hall made a severe jug handle turn, which is dangerous and inappropriate in this situation. .... Hall admitted that he had to swing wide, well into the left lane. At the same time, traffic is approaching from the rear, the driver has to avoid a telephone or power pole, and then avoid a wet muddy shoulder into a dark area. This is substantial evidence of wantonness.

(Doc. 81 at 6-9).

Thus, Waters argues that issues of fact exist as to Hall's wanton operation of the tractor trailer; namely, "whether Mr. Hall knew that blocking both lanes of the highway could likely or probably result in injury. .... there are several reasons why Mr. Hall acted with a consciousness knowing that his actions could lead to injury, primarily that it is self-evident that blocking both lanes of travel at dark or dusk could likely lead to injury." (Doc. 81 at 8). In support, Waters relies on the opinions of his expert Travis Gourley (Gourley), notably Paragraphs 13-18 of his Affidavit. (Doc. 81 at 4; Doc. 81-5 (Aff. Gourley)).

Paragraphs 14-18 of Gourley's Affidavit relate to Hall's operation of the truck. In these paragraphs, Gourley attests as follows:

> 14. Mr. Hall indicated that he could not make a right-hand turn into the private driveway from the lane he was traveling in. The geometry of the roadway and private drive along with the physical capabilities of Mr. Hall's tractor and trailer combination indicate that the right-hand turn could not have been completed from the right lane.
>
> 15. Mr. Hall said that Mr. Waters vehicle was on the bridge as he began to make his right-hand turn into the private drive. At 55 mph it would have taken Mr. Waters approximately 30 seconds to reach the area of the incident.
>
> 16. Based on Mr. Hall's testimony, he would have been blocking the southbound lanes of travel at night for approximately 30 seconds.
>
> 17. Mr. Waters attempted to avoid running into Mr. Hall's tanker trailer based on the physical evidence.
>
> 18. Mr. Hall's tanker trailer was blocking the right-hand lane and caused the subject crash.

15

(Doc. 81-5 at 3 (Aff. Gourley at ¶¶14-18)). Per Waters, Gourley opines that: Waters attempted to avoid running into Hall's tanker trailer based on the physical evidence, and Hall's tanker trailer was blocking the right-hand lane and caused the subject crash. (Doc. 81 at 4-5). From this, Waters asserts wantonness because: "[a]ccording to publications, a right-hand turn must be made as close as practical to the right-hand side of the roadway. By his own admission, Mr. Hall made a severe 'jug handle' turn, which is a 'sloppy and dangerous' turn and not the buttonhook turn that is taught in driver training manuals." (Id. at 5).

As an initial matter, Paragraphs 14-18 of Gourley's Affidavit consist largely of Gourley's characterization of Hall's testimony. Waters has done little to link these paragraphs of Gourley's Affidavit to the existence of genuine issues of material fact *for wantonness* on summary judgment. And the Court will not do so for him.

Instead, the Court focuses on the parties' briefed arguments and the specific evidence cited to in support same. First, Waters' characterization of the facts differs from the Defendants. As illustration, per Defendants: "[a]t the time of the accident, Hall was traveling on the Cochrane causeway and attempting to make a right turn into a private drive. As he approached the private drive, he had to swing left and make a wide right turn into the drive because the drive is narrow. Prior to initiating his turn, Hall was in the right lane and he observed headlights in his side mirror of the vehicles behind him. The vehicles were a safe distance behind him, so Hall began his turn. He turned on his right turn signal, swung left and then he turned back right to pull into the drive. As Hall was almost completely off the road and into the drive, the Plaintiff drove into the trailer." (Doc. 78). Waters' characterization is as follows: "Mr. Hall stated that he made this turn knowing that there were two cars on the Cochrane bridge a distance of 2,500 feet approximately. At a rate

16

of 55 miles per hour that's 80.6667 feet per second or 30 seconds for those cars on the bridge to reach the area of collision ... Mr. Hall made a severe jug handle turn, which is dangerous and inappropriate in this situation. Mr. Hall admitted that he had to swing wide, well into the left lane. At the same time, traffic is approaching from the rear, the driver has to avoid a telephone or power pole, and then avoid a wet muddy shoulder into a dark area. This is substantial evidence of wantonness." (Doc. 81 at 9).

Regardless of the differing versions of the accident, for Waters' claim to survive summary judgment he has to show --when the facts are viewed in the lights most favorable to him -- the existence of genuine issues of material fact as to whether Hall wantonly operated the tractor trailer. This means that issues of material fact must exist as to Hall's "conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."  The question then, is whether fair-minded persons in the exercise of impartial judgment could reach different conclusions as to the existence of wantonness. Typically, this question of fact is for the jury.  This question is for the Court when there is a lack of evidence from which a jury could reasonably infer wantonness.

For this claim to survive summary judgment, Waters relies heavily on Monroe v. Brown, 307 F. Supp. 2d 1268 (M.D. Ala. 2004) and Sellers v. Sexton, 576 So. 2d 172 (Ala. 1991) to support his wantonness claim.  However, those cases are distinguishable.  For instance, contrary to Monroe, there is insufficient evidence that Hall had knowledge of or and/or perceived a clear or express potential hazard (i.e., a vehicle braking in front of him) and that he continued to consciously act in disregard of the potential hazard (versus the defendant's act in Monroe). Likewise, distinct from Sellers, this is not a case in which the roadway had encumbrances or

17

dangerous conditions, or that sufficient evidence exists that Hall had knowledge of and/or conscious appreciation of any pending hazard. Rather, the actions of Hall are more akin to those cases in which a driver commits an error in judgment.

Even when viewed in the light most favorable to Waters, the evidence supports a finding that Hall basically tried to beat the traffic but committed an error in judgment resulting in the accident -- an error as to the amount of time it would take him to make the right-hand turn and/or an error in gauging the time it would take the vehicles behind him to catch up to him on the roadway. This is insufficient for wantonness -- there must be something more. Allen, 2012 WL 3775735, *3 (fact that the defendant rear ended plaintiff, even though he had visibility of approximately 1750 feet amounted to a failure to maintain a proper lookout which, without more, did not rise to wantonness); Craft v. Triumph Logistics, Inc., 2015 WL 1565003,*2 (M.D. Ala. Apr. 8, 2015) ("If mere inattention, *without something more that contributes to the accident,* that is, *without some exacerbating circumstance,* could constitute wantonness, then the concepts of negligence and wantonness would collapse into one[]") (emphasis in original)). In sum, Waters' version of events is insufficient to create a genuine issue of material fact as to wantonness -- whether Hall exhibited reckless indifference to a known danger likely to inflict injury. An error in driving judgment is not tantamount to "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."[6] Thus, summary judgment is **GRANTED** in favor of Hall on Waters' wanton operation of the tractor trailer claim.

---

6 Alabama federal courts have held that a driver's inattention or lack of due care does not rise to the level of conduct necessary to constitute wantonness. See, e.g., Askew v. R & L Transfer. Inc., 676 F.Supp.2d 1298 (M.D. Ala. 2009); Wright v. McKenzie, 647 F.Supp.2d 1293 (M.D. Ala. 2009); Allen v. Con-Way Truckload. Inc., 2012 WL 3775735 (N.D. Ala. Aug. 23, 2012). Alabama courts also refuse to

**2.      All Defs - Wanton Failure to Place and Render Conspicuity Markings**

Waters alleges that Hall and R an D wantonly failed to properly place and render conspicuity markings on the trailer. Per Waters, he "did not see the tanker until it was too late. This coincides with Mr. Hall's additional failure to properly apply reflective conspicuity tape. Improperly placed conspicuity tape creates reduced visibility and increases the risk of a crash. .... This is a level of consciousness that satisfies the first element of wantonness." (Doc. 81 at 7-8).

Defendants summarily state that "there is no evidence of any deficiencies related to conspicuity markings on the trailer, much less that Hall had any wanton conduct regarding conspicuity markings." (Doc. 78 at 10).  Defendants do not address this claim substantively, cite evidence of record in support of their argument, or otherwise provide a basis for summary judgment on same. The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark, 929 F.2d at 608 (quoting Celotex, 477 U.S. at 32)).  Defendants have wholly failed to satisfy their burden for this claim.  As such, Defendants' motion for summary judgment on Waters' wanton failure to properly place and render conspicuity markings claim is **DENIED.**

---

allow wantonness claims in automobile accident cases where a driver violated another's right-of-way or a rule of the road. See, e.g., Thedford v. Payne, 813 So.2d 905 (Ala. 2001) (driver was not wanton where he testified he was looking out the side window, then looked ahead and rear-ended another vehicle); Ex parte Anderson, 682 So.2d 467, 470 (Ala. 1996) (summary judgment on wantonness proper where a light rain was falling and vehicle attempting a turn on the opposite side of the intersection obstructed the defendant's view of oncoming traffic, yet defendant entered the intersection anyway); George v. Champion Ins. Co., 591 So.2d 852 (Ala. 1991) (affirming summary judgment for wantonness for driver who was not watching the road while approaching an intersection and ran a red light because she was talking with backseat passengers); Partridge v. Miller, 553 So. 2d 585 (Ala. 1989) (driver who violated plaintiffs' right of way was not wanton although defendant made a left-hand turn in front of plaintiff who had the right-of-way).

V.      **Conclusion**

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment (Doc. 78) is **GRANTED** as to negligent entrustment against R an D; **GRANTED** as to wanton entrustment against R an D; **DENIED** as to Defendants' wanton placement/rendering of conspicuity markings on the trailer; and **GRANTED** as to Hall's wanton operation of the tractor trailer.  It is further **ORDERED** that Defendants' Objections to Paragraph 13 of Gourley's Affidavit are **MOOT.**

**DONE** and **ORDERED** this the **26th** day of **February 2021.**

/s/Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**