IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FARON WATERS,         ) | |
|     Plaintiff,   ) | |
| ) | |
| v.         ) | CIVIL ACTION: 1:19-00798-KD-C |
| ) | |
| ROY W. HALL, JR., *et al.*,   ) | |
|     Defendants.   ) | |

**ORDER**

This matter is before the Court on Defendant Team Transport, Inc.'s motion for summary judgment and evidentiary submissions (Docs. 102, 103), Plaintiff Faron Waters' Response and Motion to Strike the Affidavit of Elizabeth Sparks (Doc. 106), Team Transport's Reply (Doc. 107), and Team Transport's response in opposition to Waters' motion to strike (Doc. 108).

**I.     Findings of Fact**[1]

The underlying facts and procedural background of this case have been detailed in the Court's ruling on Defendant Roy W. Hall, Jr. and Defendant R an D Trucking, LLC's joint motion for summary judgment (Doc. 117). For purposes of assessing wantonness on summary judgment, the Court finds the following additional relevant facts regarding the retroreflective conspicuity tape (tape) on Team Transport's semi-trailer in relation to *Federal Motor Carrier Safety Regulation* 49 CFR § 393.11:[2]

---

1 The facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

2 The parties interchangeably reference the tape being placed on a trailer and a tanker; however, a review of the photographic evidence submitted with Section 393.11 indicates that it is a "semi-trailer" per Section 393.11 (Figure 9). (Doc. 102-1). The Court will reference it herein as a semi-trailer.

1

- Post-accident, after assessing whether the tape on the semi-trailer was placed too high, Team Transport concluded that at the time of the accident the tape was installed 18" higher than the maximum height allowed under Section 393.11. (Doc. 102-2 at 2-3 (Dep. Sparks at 80-81)).

- Under Section 393.11, the tape should cover 50% of the length of a semi-trailer, but Team Transport has not, post-accident, looked at the semi-trailer to determine whether the tape covered 50% of its length. (Doc. 102-2 at 2 (Dep. Sparks at 80)).

- When the semi-trailer underwent its required annual inspection on January 12, 2018, the tape required under Section 393.11 was deemed "OK." (Doc. 102-3 at 9).

Specifically, in his Third Amended Complaint, Waters alleges that Defendant Team Transport owned the semi-trailer involved in the October 23, 2018 accident. (Doc. 43 at 2). Waters asserts that at that time, agents or employees for Team Transport negligently or wantonly rendered and/or failed to render conspicuity marking systems (reflective tape) on the semi-trailer, and that such was insufficient and not in compliance with 49 C.F.R. § 393.11 and other regulations. (Id.) Waters alleges that Team Transport (and its agents/employees) negligently and wantonly failed to properly place/render conspicuity marking systems (reflective tape) on the semi-trailer; and "wantonly failed to ensure that conspicuity markings [reflective tape]on the [semi-trailer] ... were present and/or in the appropriate location in accordance with federal regulations." (Id. at 3-4).  Team Transport now moves for summary judgment on wantonness. (Id. at 4 at ¶15).

## II.   Motion to Strike

Waters moves to strike the Affidavit of Team Transport's Safety Supervisor/Compliance Officer, Elizabeth Sparks (Sparks) (Doc. 102-3), the designated Fed.R.Civ.P Rule 30(b)(6) corporate representative of Team Transport regarding reflective tape and its purposes.  Waters argues the affidavit is inconsistent with Sparks' prior deposition testimony and is self-serving. Waters explains: "[t]he purpose of the affidavit is solely to offer an excuse of ignorance and passive

2

noncompliance with D.O.T. regulations. It is inconsistent with Team Transport's testimony ... Team Transport offers a receipt from its third-party vendor that its retroreflective tape was 'OK' and complied with 49 C.F.R. § 393.11 when in fact Team Transport's ...[semi-trailer] did not comply." (Doc. 106 at 2).  In so doing, Waters *implies* that Sparks' Affidavit is a sham due to inconsistency, and that Team Transport has submitted what some courts reference as an "eleventh-hour alteration" of evidence or testimony (presumably due to comparing the Sparks Affidavit "OK" notation regarding the status of the reflective tape by a third-party vendor with Sparks' deposition testimony that the placement of the tape was 18 inches too high -- suggesting what Waters calls "passive ignorance .... to escape the knowledge aspect" of Section 393.11).  Waters argues further:

> Team Transport stated in this case that it is required to comply with the Federal Motor Carrier Safety Regulations ("FMCSR"). In doing so, she acknowledged that the retroreflective tape assists in making more visible at night. (Team Transport dep., pp. 80-85, 91-92). Team Transport also stated that it is the responsibility of the driver and anyone in the line charged with compliance to make sure its inspections were correct. (Team Transport dep., pp. 92-93). Ms. Sparks's affidavit is contrary to that testimony and offered for the express purpose of claiming ignorance of Team Transport's affirmative obligations under the FMCSR (specifically, the violation of §393.11 and its retroreflective tape requirements). The inspection she alludes to took place on January 12, 2018. This collision occurred on October 23, 2018.

(Doc. 106 at 3).

Rule 56 of the *Federal Rules of Civil Procedure* provides that motions to strike submitted on summary judgment are not appropriate.  Rule 56(c)(2) provides: "[a] party may *object* that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2) (emphasis added).   The Advisory Committee Notes specify:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as

presented or to explain the admissible form that is anticipated. *There is no need to make a separate motion to strike* . If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Fed.R.Civ.P. 56, *Adv. Comm. Notes,* "Subdivision(c)" (2010 Amendments) (emphasis added). See, e.g*., Campbell v. Shinseki,* 546 Fed. Appx. 874, 879 (11th Cir. 2013) ("[t]he plain meaning of these provisions show that objecting to the admissibility of evidence supporting a summary judgment motion is now a part of summary judgment procedure, rather than a separate motion to be handled preliminarily[]").  As such, the Court construes Waters' motion to strike as an Objection to Sparks' Affidavit, to be overruled or sustained.

"Under the law of this Circuit, we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 at n. 7 (11th Cir. 2003). See also Fisher v. Ciba Specialty Chemicals Corp., 238 F.R.D. 273, 284 (S.D. Ala. 2006) (explaining and applying "sham affidavit" rule).  Specifically, Rule 56(e) of the Federal Rules of Civil Procedure requires that a party opposing a properly supported motion for summary judgment set forth specific facts, admissible as evidence, showing the existence of a genuine issue for trial. The rule specifically allows the court to consider the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits submitted by the opposing party in determining whether a genuine issue exists.  However, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984).  In order to be stricken as a sham, an affidavit must be

4

inherently inconsistent. See, e.g., Rollins v. TechSouth, Inc., 833 F.2d 1525 (11th Cir. 1987).

Generally, a comparison of prior deposition testimony with the more recent declarations or affidavits reveals whether not they are clearly or inherently inconsistent. See, e.g., Fisher, 238 F.R.D. at 284. And where there is no obvious inconsistency, the "sham affidavit" rule is inapplicable. See, e.g., King v. ADT Sec. Servs., 2007 WL 2713212, *3 (S.D. Ala. Nov 17, 2007); Kerns v. Sealy, 2007 WL 2012867, *10-11 (S.D. Ala. Jul. 6, 2007) (citing Van T. Junkins, 736 F.2d 656).  As set forth in King, 2007 WL 2713212, *3:[3]

> …the Eleventh Circuit has recently cautioned that the sham affidavit rule "is applied sparingly because of the harsh effect it may have on a party's case." *Allen v. Board of Public Educ. for Bibb County,* --- F.3d ----, *8, 2007 WL 2332506 (11th Cir. Aug. 17, 2007) (citation and internal quotations omitted). For that reason, and to avoid depriving the trier of fact of the opportunity to discern which witnesses are telling the truth and when, this Circuit "require [s] the court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit." *Id*. (citation omitted). For any lesser variation in testimony, the proper approach is to test that inconsistency through cross-examination at trial and allow the jury to weigh it in determining the witness's credibility. There being nothing more than a possible inconsistency, and certainly much less than an inherent inconsistency…the sham affidavit rule has no application, and the Motion to Strike is denied as to this passage.

Additionally, "eleventh hour alteration" of a corporate representative's testimony is disallowed. See, e.g., Powell v. American Red Cross, 518 F.Supp.2d 24, 38 at n. 15 (D.D.C. 2007) (in "Rainey v. American Forest & Paper Association, Inc., 26 F.Supp.2d 82, 93–96 (D.D.C.1998) ... the Court foreclosed a corporate defendant from introducing on summary judgment an affidavit

---

    3 See also e.g., Kennett-Murray Corp. v. Bone, 622 F.2d 887, 893 (5th Cir. 1980) (courts must consider all the evidence and cannot disregard an affidavit merely because it conflicts to some degree with an earlier deposition); Johnson v. Big Lots Stores, Inc., 2008 WL 6928161, *3 (E.D. La. May 2, 2008) ("Although the testimony of a corporate representative under Rule 30(b)(6) is binding on the corporation, such testimony does not constitute a 'judicial admission' that decides an issue with finality or estops a party from contradicting the testimony of an earlier corporate representative."); Hyde v. Stanley Tools, 107 F. Supp. 2d 992, 993 (E.D. La. 2000) (while a court may disregard an affidavit "which directly contradicts" an earlier 30(b)(6) deposition...[c]ourts have allowed a contradictory or inconsistent affidavit to nonetheless be admitted if it is accompanied by a reasonable explanation[]").

from a former employee that varied in critical respects from the deposition testimony of the defendant's corporate representatives. Absent any showing by the defendant that the assertions in the proffered affidavit were unavailable at the time of the corporate representatives' depositions, the Court found the defendant's ]eleventh hour alteration] of its corporate representatives' testimony to be both ]inconsistent with [....30(b)(6)" and "precluded by it.] Id. at 94–95."). The import of a Rule 30(b)(6) corporate representative was summarized in Johnson v. Big Lots Stores, Inc., 2008 WL 69281616, *3-4 (E.D. La. May 2, 2008):

> Although the testimony of a corporate representative under Rule 30(b)(6) is binding on the corporation, such testimony does not constitute a "judicial admission" that decides an issue with finality or estops a party from contradicting the testimony of an earlier corporate representative. *See, e.g.,* A & E Prods. Group., L.P. v. Mainetti USA, Inc., No. 01 Civ 10820(RPP), 2004 WL 345841, at *6–*7 (S.D.N.Y. Feb. 25, 2004) (allowing corporate party to introduce declaration of one of its employees that was inconsistent with deposition testimony corporation's Rule 30(b)(6) representative); Industrial Hard Chrome Ltd. v. Hetran, Inc., 92 F.Supp.2d 786, 791 (N.D.Ill.2000) (explaining that [R]ule 30(b)(6) deposition "testimony is not a judicial admission that ultimately decides an issue. The testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes"); W.R. Grace & Co. v. Viskase Corp., No. 90 C 5383, 1991 WL 211647, at *2 (N.D.Ill. Oct. 15, 1991) (allowing corporate party to offer at trial evidence contrary to its corporate representative's earlier testimony in a Rule 30(b)(6) deposition); Hyde v. Stanley Tools, 107 F.Supp.2d 992, 992–93 (E.D.La.2000) ("[While a] court may disregard an affidavit which directly contradicts an earlier 30(b)(6) deposition ... [c]ourts have allowed a contradictory or inconsistent affidavit to nonetheless be admitted if it is accompanied by a reasonable explanation."). *Cf.* Brown & Root, Inc. v. Am. Home Assur. Co., 353 F.2d 113, 116 (5th Cir.1965) (explaining in the context of an expert witness who contradicted his earlier deposition testimony at trial that "except for those specialized, rare assertions characterized as judicial admissions, a party is entitled to explain an admission and even to retract it. When that is done, the factual evaluation of the admission vis-à-vis explanation, retraction, or repudiation is for the trier of fact.")
>
> The Fifth Circuit has explained the difference between a judicial admission and an evidentiary admission as follows:

> A judicial admission is a formal concession in the pleadings or stipulation by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention.... By contrast, an ordinary evidentiary admission is merely a statement of assertion or concession made for some independent purpose, and it may be controverted or explained by the party who made it. A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party.

*Martinez v. Bally's Louisiana, Inc.,* 244 F.3d 474, 476–77 (5th Cir.2001) (internal quotations and citations omitted). "[F]actual assertions in pleadings and pretrial orders are considered to be judicial omissions [that are] conclusively binding on the party who made them." *White v. ARCO/Polymers, Inc.,* 720 F.2d 1391, 1396 (5th Cir.1983). But statements made by a party, whether an individual or a corporation through its designated representative, "operate as adverse evidentiary admissions" that may be revised later. *Id. See also Taylor,* 166 F.R.D. at 362 n. 6 (explaining that a "designee can make admissions against interest under Fed. R. Ev. 804(b)(3) which are binding on the corporation").

Consistent with the view that Rule 30(b)(6) helps to make a corporate party more like an individual by requiring the designation of someone who can speak on the corporation's behalf, a corporation is subject to the same opportunity to revise its designee's earlier testimony as an individual. So just as an individual is bound by her earlier testimony, so too is a corporation. And just as an individual may seek to revise her earlier statements, so too may a corporate party through its designated witness. Such efforts, however, are properly subject to the critical scrutiny of the trier of fact, in this case the Court, keeping in mind that a corporate party has an obligation to designate a knowledgeable witness under Rule 30(b)(6) and that the Rule 30(b)(6) designee's statements represent the corporation's position on discussed topics....

Waters generally references pages of Sparks' deposition testimony (Doc. 106 at 3 (Citing Sparks' Deposition at 80-85 and 91-93), claiming that such are contrary to the testimony in her Affidavit. Waters defines his sham affidavit/eleventh-hour alteration claim as follows:

> Team Transport ..... acknowledged that the retroreflective tape assists in making more visible at night. (Team Transport dep., pp. 80-85, 91-92). Team Transport also stated that it is the responsibility of the driver and anyone in the line charged with compliance to make sure its inspections were correct. (Team Transport dep., pp. 92-93). Ms. Sparks's affidavit is contrary *to that testimony*....

(Doc. 106 at 3 (emphasis added).  Sparks' Affidavit states as follows:

> 3.  The retroreflective tape on the Team Transport tanker involved in the accident with Mr. Waters had always been installed at the same height and in the same length since Team Transport acquired the tanker.
>
> 4. The Team Transport tanker involved in the accident with Mr. Waters was inspected by various law enforcement agencies on numerous occasion[] prior to the accident, and the retroreflective tape on said tanker was never deemed to be in violation of the Federal Motor Carrier Safety Regulations or any other law or regulation. Copies of the vehicle examination reports for the subject tanker from 2018 are attached hereto as Exhibit A.
>
> 5. When the Team Transport tanker involved in the accident with Mr. Waters underwent its required annual inspection in January 2018, the inspector deemed the retroreflective tape required by 49 C.F.R. § 393.11 to be "OK." A true and correct copy of the 2018 Annual Vehicle Inspection Report for the tanker involved in the accident with Mr. Waters is attached as Exhibit B.
>
> 6. At no time prior to this lawsuit was Team Transport aware that the retroreflective tape on the tanker involved in the accident with Mr. Waters was not in strict compliance with the provisions of 49 C.F.R. § 393.11.

(Doc. 102-3 at 2-3 (Aff. Sparks at ¶¶3-6)).  Sparks Affidavit does not address tape visibility, driver responsibility, and/or the responsibility of "anyone in the line charged with compliance." Accordingly the affidavit is not inherently inconsistent.

Further, Waters argues *alternatively* that Sparks' reference to the January 2018 inspection of the semi-trailer in her Affidavit (and submission of same as an exhibit to her Affidavit) is inconsistent with her deposition testimony because such is "for the purpose of asserting some passive ignorance of the law as an excuse." (Doc. 106 at 3).  However, this is not an inconsistency between a deposition and affidavit.  Waters' Objection to Sparks' Affidavit is **OVERRULED.**

8

**III.     Summary Judgment**

**A.     Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c) provides as follows:

> *(c) Procedures*
> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317,

9

323 (1986)).  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment.  Celotex, 477 U.S. at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

**B.     Conclusions of Law -- Wantonness**[4]

This summary judgment focuses on Waters' claim that Team Transport "wantonly failed to ensure that conspicuity markings on the trailer [semi-trailer] ....were present and/or in the appropriate location in accordance with federal regulations."  (Doc. 43 at 4 at ¶15).  Waters endeavors to create issues of material fact by arguing the federal regulations do not provide any exceptions to the requirements if/when a carrier's agent fails to meet its obligations:

> ... Team Transport seeks to avoid a wantonness claim ... because the third-party vendor it hired failed to comply with the law. When Team Transport later looked at the issue, it discovered the error. Now Team Transport wants to claim ignorance of the violation. However, Team Transport is required to comply with the FMCSR. Team Transport acknowledged that it is the responsibility of the company, driver and anyone in the line charged with compliance to make sure its inspections were correct. Ms. Sparks's affidavit is contrary to that testimony and offered for the express purpose of claiming ignorance of Team Transport's affirmative obligations under the FMCSR (specifically, the violation of §393.11 and its retroreflective tape requirements). The inspection ... took place on January 12, 2018. This collision occurred on October 23, 2018. Team Transport should not escape knowledge requirements because one of its agents violated the law.

---

[4]  Waters' wantonness claim *against Team Transport* does not depend on, or relate to, any actions or conduct by Hall.  However, that is a main basis from which Waters opposes Team Transport's motion. (Doc. 106 at 9-11).  In that regard, Waters' reliance on any actions or conduct by Hall can provide no basis from which to establish genuine issues of material fact as to the wantonness claim against Team Transport.

(Doc. 106 at 11-13).  However, this is not the standard for wantonness.

In Alabama, "[t]o establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty." *Hilyer v. Fortier*, 227 So. 3d 13, 22–23 (Ala. 2017) (citations omitted).[5]  Notably, "[w]antonness is not simply a more severe version of negligence, but is an entirely different tort concept ... wanton misconduct is characterized by the state of mind of consciously taking an action with knowledge that 'the doing or not doing of [the act] will likely result in injury ....' ..." *Green v. Markovitch*, 385 F.Supp.3d 1190, 1195 (N.D. Ala. Apr. 19, 2019) (internal citations omitted).   As explained in *Akers v. Sanderson Farms, Inc.*, 2015 WL 114221,*4 (N.D. Ala. Jan. 8, 2015) (footnote omitted):

> The Alabama Code defines wantonness, as it relates to civil law, as "[c]onduct which is carried on with a reckless or conscious disregard for the rights or safety of others." Alabama Code § 6–11–20(b)(3) (1975). ..... wantonness involve[s] "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." 646 So.2d at 603 (citing *McDougle v. Shaddrix,* 534 So.2d 228 (Ala.1988)).
>
> "Wantonness is a question of fact for the jury, unless there is a[] lack of [substantial] evidence from which the jury could reasonably infer wantonness." *Cash v. Caldwell,* 603 So.2d 1001, 1003 (Ala.1992).[ ] "The most crucial element of wantonness is knowledge, and while that element need not be shown by direct evidence it may be made to appear by showing circumstances from which the fact of knowledge is a legitimate inference ... [I]t may not be left to the conjecture or speculation of the jury." *Roberts v. Brown,* 384 So.2d 1047, 1048 (Ala.1980). *See also Klaber by & through Klaber v. Elliott,* 533 So.2d 576, 579 (Ala.1988) ("Knowledge need not be proven directly but may be inferred from the facts of the case.").

Additionally, per Hagen v. Pelletier, 2019 WL 4894544, *4 (N.D. Ala. Oct. 2, 2019) (footnote and internal citations omitted): "To prevail, the plaintiff ..... need only show that "'the actor is

---

[5] Reckless is defined as "careless, heedless inattentive; indifferent to the consequences ... marked by lack of proper caution: careless of consequence ... having no regard for consequences; uncontrolled; wild." *Berry v. Fife,* 590 So.2d 884, 885 (Ala. 1991) (citations omitted).

'conscious' that injury will likely or probably result from his actions.' ... a wantonness determination is wholly fact-dependent.... As a fact-dependent inquiry, wantonness is a question for the jury, and a court may grant summary judgment on a wantonness claim only when 'there is a total lack of evidence from which the jury can reasonably infer wantonness.' .... Alabama courts have denied summary judgment on wantonness claims when 'fair minded persons in the exercise of impartial judgment could reach different conclusions as to the existence of wantonness[]' ...."

First, Waters has failed to establish genuine issues of material fact regarding Team Transport's knowledge (conscious culpability).  The only evidence possibly favorable to Waters on his wantonness claim is: 1) post-accident, after assessing whether the tape on the semi-trailer was placed too high, Team Transport concluded that at the time of the accident the tape was installed 18" higher than the maximum height allowed under Section 393.11. (Doc. 102-2 at 2-3 (Dep. Sparks at 80-81)); and 2) under Section 393.11, the tape should cover 50% of the length of a semi-trailer, but Team Transport has not, post-accident, looked at the semi-trailer to determine whether the tape covered 50% of its length.  (Doc. 102-2 at 2 (Dep. Sparks at 80)).

In sum, there is no evidence from which a jury could determine that Team Transport consciously or intentionally placed the retroreflective tape in such a manner so as to be in violation of any regulation or law and/or that Team Transport even had knowledge before the accident that the tape was placed 18" higher than the maximum height allowed.  And based on Sparks' Affidavit: 1) Team Transport maintained the tape in the same location on the semi-trailer that it was in when Team Transport acquired same; 2) Team Transport was never cited for improper retroreflective tape and never failed an inspection for improper retroreflective tape; and 3) prior to the accident, Team Transport did not know that the tape was not in strict compliance with the Federal Motor

Carrier Safety Regulations. Waters has submitted no evidence which contradicts the foregoing or shows the requisite "knowledge" on the part of Team Transport to support a wantonness claim.

Essentially, Waters summarizes his wantonness claim against Team Transport as follows: "[t]he retroreflective tape violated the FMCSR. Team Transport wants this Court to adopt simple ignorance of fact or law as an excuse to wantonness. This is substantial evidence of wantonness." (Doc. 106 at 11). Waters is incorrect. As noted *supra*, wantonness requires a certain type of knowledge -- "the state of mind of consciously taking an action with knowledge that 'the doing or not doing of [the act] will likely result in injury." Waters has submitted no evidence indicating that Team Transport, pre-accident, had any such knowledge.

### IV. Conclusion

Accordingly, it is **ORDERED** that Defendant Team Transport's partial motion for summary judgment on wantonness (Doc. 103) is **GRANTED.**

**DONE** and **ORDERED** this the **26th** day of **March 2021.**

/s/Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**