IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **FARON WATERS,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION 1:19-00798-KD-C |
| ) | |
| **ROY W. HALL, JR.,** *et al.*, ) | |
|     **Defendants.** ) | |

**ORDER**

This matter came before the Court for a non-jury trial from August 2-5, 2021. The Court finds Plaintiff Faron Waters (Mr. Waters) failed to prove by a preponderance of the evidence that the accident was proximately caused by the alleged negligence of the Defendants.

On October 23, 2018, after working a 12-hour shift at Kimberly Clark, Mr. Waters left work between 6:30 and 6:40 p.m. Mr. Waters traveled the Cochran-Africatown USA bridge and proceeded onto a four (4) lane roadway known as the Cochran Causeway. Approximately one-half mile after exiting the bridge (and 2.5 miles from the Kimberly Clark parking lot), Mr. Waters collided into the side of a commercial cylindrical tanker, driven by defendant Roy W. Hall, Jr. (Mr. Hall). Mr. Hall was turning right off of the Cochran Causeway into the driveway leading to the overflow parking area of Alabama River Cellulose (ARC) Terminal/Plant (now Zenith).

Mr. Waters contends that he was driving 55-60 mph and was keeping an attentive lookout. However, he did not see the tanker until he was approximately 30 feet away. Admirably, he chose to turn into the tanker, rather than risk hitting another vehicle that might have been in the adjoining lanes. Amazingly, in spite of running underneath the belly of the tanker and crushing the cab of his truck, Mr. Waters walked away from the scene and did not require medical attention at the time.

To establish negligence in Alabama, Mr. Waters must prove: 1) that the defendant(s) owed him a duty; 2) that the defendant(s) breached that duty; 3) that he suffered a loss/injury; and 4) that the defendant(s)' negligence was the actual and proximate cause of his injury. Palmer v. Infosys Techs. Ltd., Inc., 888 F.Supp.2d 1248, 1255 (M.D. Ala. 2012); Alfa Life Ins. Corp. v. Colza, 159 So. 3d 1240, 1248 (Ala. 2014).

Mr. Waters contends that Defendants Mr. Hall, R an D Trucking, LLC (R an D),[1] and Team Transport, Inc. (Team Transport)[2] each were negligent and are liable for his injuries from the wreck. As to Mr. Hall and R an D, Waters contends that Mr. Hall negligently maneuvered the right turn into the driveway (by using a jug handle turn) and stopped short of fully exiting the highway, leaving a portion of the rear tandem of the trailer in the right lane of the roadway. Mr. Waters also alleges that Mr. Hall was negligent by choosing to turn right into this narrow driveway, because this driveway required an additional and unnecessary turn and was partially obscured by plants on the shoulder.

For approximately two (2) miles after leaving the Cochran bridge, the Cochran Causeway is an ingress/egress point for several industrial plants. Wrecks are common occurrences on this stretch of the road.[3] As a result, the road is well marked with warnings about trucks exiting and entering the causeway. Mr. Waters traveled the roadway approximately 8-10 times per week for 13 years. Mr. Hall was also familiar with this road because he had delivered cargo to the ARC plant previously.

---

[1] R an D is owned by Hall. The truck is owned by R an D.

[2] Team Transport owned the tanker that Hall was transporting. At the time, Hall was under lease with Team Transport to pick up, transport, and deliver cargo stored in tankers.

[3] A fatal wreck occurred during the course of this four (4) day trial which shut this stretch of roadway down for several hours.

Mr. Hall contends that on the night in question, he carefully checked the traffic with his mirrors, slowed down near the driveway and waited for cars to pass on his left. Then after seeing the closest cars were on the Cochran bridge, Mr. Hall executed the right turn by turning slightly into the left lane and then immediately turning right into the driveway. This is known as a jug handle turn. Mr. Hall estimates that he was traveling at approximately 5 mph when making the turn and did not stop until the impact.

In support of his claim that Mr. Hall's executed a negligent turn, Waters elicited testimony from defendants' expert Will Partenheimer (Mr. Partenheimer), an experienced accident reconstructionist and former traffic crash team police officer, that the Alabama CDL Manual calls the jug handle turn an incorrect turn. But according to Mr. Partenheimer, a jug handle turn is not improper in all situations, particularly where a driver is turning into a narrow driveway. Mr. Partenheimer also stated credibly and unequivocally that "this particular turn did not have any impact on this crash" and that "there is nothing improper about the turn he [Mr. Hall] made."

Moreover, the Court finds Mr. Hall's description of his turn and speed to be credible. The fact that Mr. Hall was required to make the turn slowly does not support Mr. Waters' claim of negligence. As the lead vehicle, it was Mr. Waters duty to yield. Also, Mr. Waters' accident reconstructionist expert Travis R. Gourley (Mr. Gourley) testified that it would have taken Mr. Hall, based on his description of his actions, about 10-15 seconds to complete the turn into the driveway. And assuming a safe speed of 55 mph, Mr. Gourley opined that it would have taken 27 seconds for a vehicle to get from the end of the Cochrane bridge to the point of impact. Thus, Mr. Hall had sufficient time to make a safe turn. So other than Mr. Waters' speculation, there is no support for Mr. Waters' contention that Mr. Hall's method and execution of the right turn was the proximate cause of the accident.

Mr. Waters next contends that the Defendants' placement of the reflective tape on the tanker was negligent because it was approximately 18 inches higher than the federal regulations provide. Mr. Waters' also contends that the reflective tape should have been installed on the hose tube (over the rear tandem), which would have been significantly lower and would have made the reflective tape more visible to approaching traffic.

To support this contention, Mr. Waters points to the Department of Transportation (DOT) regulations which provide that the reflective tape "must be positioned as horizontally as practicable, beginning and ending as close to the front and rear as practicable.... The centerline for each strip of retroreflective sheeting must be between 375 (15 inches) and 1,525 mm (60 inches) above the road surface... or as close as practicable to this area." (PEX 38-3).

The evidence reveals that the tanker Mr. Hall was driving was outfitted with lights, blinkers, and 240.5 inches of reflective tape on the passenger side of the tanker (the side which would have been visible to Mr. Waters). While Mr. Waters takes issue with the placement of the tape, the Court finds no negligence by any of the defendants in regard to the placement of the reflective tape. The reflective tape pieces on his curved tanker were placed at 78 inches from the ground and was spaced from rear to front.[4] A similar placement had been previously approved by the DOT in an interpretation letter. (DEX 43-1). Also, on January 12, 2018, the DOT certified mechanics conducted an inspection of the trailer and concluded that all lighting devices and reflectives required by federal regulation were operable, and the trailer passed the inspection. (JEX 11). Jeffrey Suway (Mr. Suway), a mechanical engineer and expert in human factors and accident reconstruction, explained that the placement was appropriate due to the curvature of the tanker:

---

[4] The length of the tape was 12 inches shorter than required. However, there is no evidence that this shortage contributed to Mr. Waters' failure to see and yield to the tanker.

for purposes of visibility the reflective tape is sensitive to angles and must be perpendicular to the ground which on this trailer was at 78 inches.  Also, Mr. Suway refuted Mr. Waters' contention that the reflective tape should have also been installed on the lower rear tubing: the tape should be in a straight line delineating the entire length of the trailer, and to have a partial lower strip could confuse approaching vehicles as to the length of the tanker. Nor should the tape be installed on removable parts like the tubing.  (See DOT publication PEX 38-7 for illustration of proper placement).  The Court declines Mr. Waters' invitation to determine, in spite of these approvals and Dr. Suway's explanation, that the defendants' placement of the reflective tape was negligent and a proximate cause of the accident.

Mr. Waters also generally contends that he did not see the tanker in sufficient time to yield. The facts show that an attentive driver[5] would have seen the tanker in sufficient time.  The outside conditions were clear and dry, it was not yet completely dark, and all of Mr. Hall's lights were operational upon inspection. The side of the tanker had three (3) blinkers engaged and three (3) reflective lights lower on the trailer (JEX 6), the trailer was a stainless steel (which is light reflective) (PEX 35), and the spaced reflective tape covered the entire length of the tanker (JEXs

---

[5] The Court need not address the defendants' claim that Mr. Waters was contributorily negligent. However, the Court notes that the credible evidence indicates that Mr. Waters was reading texts at 6:43 pm and 6:45 pm (atomic time), immediately before the accident.  Mr. Waters contends that he was not reading texts and that Mr. Hall's Omnitrack device supports that the wreck occurred a few minutes before 6:44. However, the logical explanation is that the Omnitrack device was not synced with the cell phone's atomic time (although no evidence was presented on this issue).  This is because Mr. Waters confirmed that he did not read the texts immediately after the wreck, so the only logical conclusion is that Mr. Waters was distracted by the texts immediately before the wreck.

As an aside, the texts were notifications from a friend that lottery tickets had been purchased on Mr. Waters' behalf.  When asked at trial whether he won the lottery, Mr. Waters said that he guesses he did not because his friend did not notify him otherwise.  The Court begs to differ.  Mr. Waters won the "life lottery" when he walked away, with minimal bodily harm, from this accident.  To paraphrase the EMT's statement after viewing the wreck; Mr. Waters should never have been able to walk away alive from that truck.  **We are all thankful that he did**.

6-7). Mr. Suway credibly testified that the tape was visible as far away as 1,000 feet, but certainly at 400 feet away. And according to Mr. Suway, who the Court finds credible, the 400 foot visibility would have permitted a vehicle driving going 55 mph on a dry road, to have safely avoided colliding with the tanker. In sum, Mr. Waters has not submitted sufficient evidence to establish that the Defendants' placement of reflective tape proximately caused the accident resulting in his injuries.

Accordingly, it is **ORDERED** that Judgment is entered in favor of the Defendants, Roy W. Hall, Jr., R an D Trucking, LLC, and Team Transport, Inc., and against Plaintiff Faron Waters.

A Final Judgment shall be issued in conjunction with this Order.

**DONE** and **ORDERED** this the **10th** day of **August 2021.**

/s/ Kristi K. DuBose
**KRISTI K. DUBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**